[No. S098817. Mar. 25, 2004.]

COVENANT CARE, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOURDES M. INCLAN et al., Real Parties in Interest.

772

774

## COUNSEL

Horvitz & Levy, Julie L. Woods, David S. Ettinger; Even, Crandall, Wade, Lowe & Gates, Randolph M. Even & Associates, Randolph M. Even and Stephanie Charles for Petitioners.

Hooper, Lundy & Bookman, Mark E. Reagan and Mark A. Johnson for California Association of Health Facilities as Amicus Curiae on behalf of Petitioners.

Hanson, Bridgett, Marcus, Vlahos & Rudy, Paul A. Gordon and Michelle L. Sullivan for California Association of Homes and Services for the Aging as Amicus Curiae on behalf of Petitioners.

Fred J. Hiestand for Californians Allied for Patient Protection and the Civil Justice Association of California as Amici Curiae on behalf of Petitioners.

Thelen Reid & Priest, Curtis A. Cole, Kenneth R. Pedroza and E. Todd Chayet for California Medical Association, California Dental Association and California Healthcare Association as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Houck & Balisok, Russell S. Balisok, Steven Wilheim, Patricia L. Canner; Law Office of Carol S. Jimenez and Carol S. Jimenez for Real Parties in Interest.

Peter G. Lomhoff for California Advocates for Nursing Home Reform, Inc., as Amicus Curiae on behalf of Respondent and Real Parties in Interest.

Wilkes & McHugh, Stephen M. Garcia, David T. Bamberger; Robinson, Calcagnie & Robinson and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Real Parties in Interest.

## OPINION

**WERDEGAR, J.**—We granted review in this matter to resolve a conflict among the Courts of Appeal as to whether the procedural prerequisites to seeking punitive damages in an action for damages arising out of the professional negligence of a health care provider, codified at Code of Civil Procedure section 425.13, subdivision (a) (section 425.13(a)), apply to punitive damage claims in actions alleging elder abuse subject to heightened civil remedies under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (Elder Abuse Act or Act). The Court of Appeal concluded section 425.13(a) does not apply. We agree, finding nothing in the text, legislative history, or purposes of either section 425.13(a) or the Elder Abuse Act to suggest the Legislature intended to afford health care providers that act as elder custodians, and that egregiously abuse the elders in their custody, the special protections against exemplary damages they enjoy when accused of negligence in providing health care. Accordingly, we affirm the judgment of the Court of Appeal.

*Background*[1]

Lourdes M. Inclan and Juan C. Inclan (plaintiffs) sued Covenant Care California, Inc., and Covenant Care, Inc. (defendants), for damages caused by defendants' care and treatment of their father, Juan A. Inclan (decedent), during the approximately eight weeks that decedent, an elder,[2] resided at defendants' skilled nursing facility in Los Angeles. More than two years after filing their initial complaint, plaintiffs moved for leave to file a fourth amended complaint. In their proposed fourth amended complaint, plaintiffs sought damages, including "general damages for pain and suffering according to proof," for willful misconduct, intentional infliction of emotional distress, constructive fraud, fraud, battery, false imprisonment, elder abuse, and wrongful death. They also sought punitive damages.

Plaintiffs' fourth amended complaint contained detailed and specific factual allegations of elder abuse. Specifically, plaintiffs alleged that decedent suffered from Parkinson's disease. Plaintiffs contracted with a managed care organization to oversee decedent's care, to act within plaintiffs' directives, and to inform plaintiffs of any change in decedent's condition or other situation requiring their attention. The managed care organization, however, assumed rights and usurped powers over decedent neither contemplated nor agreed to by decedent or plaintiffs. The managed care organization, sometimes in conspiracy with defendants, admitted and ordered the discharge of decedent, without his consent, from various health care facilities, including a convalescent hospital owned and operated by defendants, and "withh[e]ld essential care, treatment and medical services from decedent including . . . food, fluids, medicine, and basic nursing care including basic palliative care."

Plaintiffs alleged that defendants conspired and otherwise "acted with malice and oppression" in moving and treating decedent in order to maximize revenue from the Medicare and Medicaid programs and to avoid regulatory penalties for noncompliance with certain federal and state regulations. At one point, decedent was compelled to transfer to defendants' skilled nursing facility. At that facility, defendants provided decedent only with hospice services and deprived him of skilled nursing services to which he was legally entitled. Decedent's subsequent injury and death flowed in part from defendants' actions.

---

[1] Plaintiffs' motions for judicial notice, filed on January 30, 2002, and on May 1, 2002, respectively, are denied. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1064 [31 Cal.Rptr.2d 358, 875 P.2d 73].) Defendants' motion for judicial notice, filed on November 20, 2001, is granted.

[2] " 'Elder' means any person residing in this state, 65 years of age or older." (Welf. & Inst. Code, § 15610.27.)

While decedent was at defendants' nursing facility, plaintiffs further alleged, defendants knew he was suffering from Parkinson's disease and was unable to care for his personal needs. Defendants nevertheless failed to provide decedent with proper care, nutrition, hydration, and medication. Defendants' conduct was in conscious disregard of decedent's rights and safety. Decedent was left in his bed, unattended and unassisted, for excessively long periods. Although decedent increasingly could not feed or hydrate himself, he was for long periods not provided assistance with these activities. As a result, decedent was inadequately stimulated, became malnourished, and lost much of his body weight. Decedent was left in his excrement for long periods; he developed ulcers on his body that exposed muscle and bone and became septic; and he also became severely dehydrated.

As decedent deteriorated, he manifested signs and symptoms of starvation, dehydration, neglect, and abuse. Plaintiffs alleged that defendants deliberately failed to report such symptoms, neglect, and abuse to public authorities as they were legally required to do. Moreover, defendants misrepresented decedent's condition and failed to inform plaintiffs of his true condition, thus concealing his deterioration from plaintiffs.

When decedent was transferred out of defendants' nursing facility to another facility (where he died approximately a week later), plaintiffs alleged, decedent was in such condition that without immediate intervention and aggressive care he would surely die from the effects of starvation, dehydration, and infection. Decedent, however, was not transferred to an acute care facility but, rather, to a 24-hour care setting where, without any care for his acute needs, he languished and deteriorated further. As a direct and proximate result of defendants' neglect and abuse, decedent sustained personal injury, including severe emotional distress, and died.

Plaintiffs filed their motion for leave to file the fourth amended complaint claiming punitive damages on May 14, 1999. Defendants opposed the motion, arguing that under section 425.13(a), which requires such a motion be "filed within two years after the complaint or initial pleading is filed," this was too late. The trial court granted plaintiffs' motion, ruling plaintiffs were not required to comply with section 425.13(a) because the causes of action alleged in the fourth amended complaint "go beyond mere or simple professional negligence." The Court of Appeal summarily denied defendants' petition for writ relief, and we denied review.

Subsequent to the trial court's ruling, a different district of the Court of Appeal issued an opinion in *Community Care & Rehabilitation Center v. Superior Court* (2000) 79 Cal.App.4th 787 [94 Cal.Rptr.2d 343] (*Community Care*). The court in *Community Care* held that section 425.13(a) applies to

elder abuse actions in which punitive damages are sought, "whenever the gravamen of an action is *professional* malfeasance—that is, malfeasance in the provision of health care services." (*Community Care, supra,* at p. 797.) Defendants moved the trial court for reconsideration in light of *Community Care,* but the court denied the motion.

The Court of Appeal again denied defendants' petition for writ relief. Rejecting *Community Care,* the Court of Appeal ruled that plaintiffs' elder abuse claim was exempt from "the procedural hurdles created by section 425.13." We granted review.

## Discussion

As originally enacted in 1982, the Elder Abuse Act established requirements and procedures for mandatory and nonmandatory reporting to local agencies of elder abuse, as defined,[3] and the abuse of other dependent adults. The Act also addressed local agency investigation and criminal prosecution of such cases. (See Stats. 1982, ch. 1184, § 3, p. 4223.) The Act continues to contain such provisions. (See generally Welf. & Inst. Code, § 15600 et seq.)[4]

In 1991, in order "to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults" (Welf. & Inst. Code, § 15600, subd. (j)), the Legislature added Welfare and Institutions Code section 15657 to the Act. That section makes available, to plaintiffs who prove especially egregious elder abuse to a high standard, certain remedies "in addition to all other remedies otherwise provided by law" (Welf. & Inst. Code, § 15657). Specifically, a plaintiff who proves "by clear and convincing evidence" that a defendant is liable for physical abuse, neglect, or financial abuse (as these terms are defined in the Act), and that the defendant has been guilty of "recklessness, oppression, fraud, or malice" in the commission of such abuse, may recover attorney fees and costs. (*Id.,* subd. (a), incorporating by reference Welf. & Inst. Code, §§ 15610.30, 15610.57, 15610.63.)[5] On the same conditions, a plaintiff who brings suit as the

---

[3] " 'Abuse of an elder or a dependent adult' means either of the following: [¶] (a) Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering. [¶] (b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." (Welf. & Inst. Code, § 15610.07.)

[4] Although "[s]ubsequent amendment refined the 1982 enactment, . . . the focus remained on reporting abuse and using law enforcement to combat it. [Citation.] Also, Penal Code section 368 was enacted, making it [a criminal offense] for, among other things, a custodian of an elder or dependent adult to willfully cause or permit various types of injury." (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].)

[5] In its entirety, Welfare and Institutions Code section 15657 provides: "Where it is proven by clear and convincing evidence that a defendant is liable for physical abuse as defined in

personal representative of a deceased elder is partially relieved of the limitation on damages in a decedent's action imposed by Code of Civil Procedure section 377.34 and thus may recover damages up to $250,000 for emotional distress suffered by the decedent prior to death. (Welf. & Inst. Code, § 15657, subd. (b).)

Section 425.13(a) provides, in relevant part, that "[i]n any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included" unless the plaintiff "within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier" files a motion demonstrating a "substantial probability" he or she will prevail on the claim.[6] The question presented is whether plaintiffs' elder abuse claim is one "arising out of the professional negligence of a health care provider" for the purposes of section 425.13(a). We have not previously addressed whether a plaintiff seeking heightened remedies under the Elder Abuse Act must comply with section 425.13 in order to claim punitive damages.

Section 15610.63, neglect as defined in Section 15610.57, or financial abuse as defined in Section 15610.30, and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse, in addition to all other remedies otherwise provided by law: [¶] (a) The court shall award to the plaintiff reasonable attorney's fees and costs. The term 'costs' includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article. [¶] (b) The limitations imposed by Section 337.34 [*sic*: should be 377.34] of the Code of Civil Procedure on the damages recoverable shall not apply. However, the damages recovered shall not exceed the damages permitted to be recovered pursuant to subdivision (b) of Section 3333.2 of the Civil Code. [¶] (c) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer."

[6] In its entirely, section 425.13 provides: "(a) In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier. [¶] (b) For the purposes of this section, 'health care provider' means any person licensed or certified pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code or licensed pursuant to the Osteopathic Initiative Act, or the Chiropractic Initiative Act, or licensed pursuant to Chapter 2.5 (commencing with Section 1440) of Division 2 of the Health and Safety Code; and any clinic, health dispensary, or health facility, licensed pursuant to Division 2 (commencing with Section 1200) of the Health and Safety Code. 'Health care provider' includes the legal representatives of a health care provider."

Plaintiffs assert that our reasoning in *Delaney v. Baker, supra,* 20 Cal.4th 23 (*Delaney*), precludes application of section 425.13 to Elder Abuse Act causes of action. In *Delaney,* we held unanimously that a cause of action seeking the Act's heightened remedies for reckless, oppressive, fraudulent, or malicious elder abuse is not based on "professional negligence" within the meaning of Welfare and Institutions Code section 15657.2,[7] a section of the Act that excludes from its purview causes of action based on such negligence. (*Delaney, supra,* at pp. 29–32.) Our rationale, which we derived from the language and history of the Act, was that the Legislature intended section 15657.2 to clarify "that the acts proscribed [by the Act] do not include acts of simple professional negligence, but refer to forms of abuse or neglect performed with some state of culpability greater than mere negligence." (*Delaney, supra,* at p. 32.)

Observing that the relevant language in section 425.13 ("arising out of the professional negligence of a health care provider") is similar to the Welfare and Institutions Code section 15657.2 language we construed in *Delaney* ("based on the health care provider's alleged professional negligence"), plaintiffs argue we should rule here, as we did there, that causes of action against health care providers that otherwise come within the scope of the Elder Abuse Act are not within the meaning of the section 425.13 language. (*Delaney, supra,* 20 Cal.4th at p. 32.)

Factually, as noted, plaintiffs alleged their decedent suffered bodily injury, pain, and suffering (including severe emotional distress) at defendants' hands. More specifically, plaintiffs alleged decedent's injuries were caused by defendants' willful misconduct in violation of the Elder Abuse Act, consisting in fraudulent business practices, intentional infliction of emotional distress, battery upon, and false imprisonment of decedent. In describing defendants' abuse of decedent, plaintiffs specifically alleged despicable and deceptive business practices, as well as other unlawful conduct by defendants, some of which constituted conspiracy and all of which was reckless, intentional, deliberate, or knowing. Plaintiffs also alleged that in abusing decedent, defendants consciously disregarded his rights and safety, acting with fraud, oppression, and malice.

In its ordinary sense, "professional negligence" is failure to exercise " 'knowledge, skill, and care ordinarily employed by members of the profession in good standing.' " (*Delaney, supra,* 20 Cal.4th at p. 31.) Hence,

---

[7] In its entirety, Welfare and Institutions Code section 15657.2 provides: "Notwithstanding this article, any cause of action for injury or damage against a health care provider, as defined in Section 340.5 of the Code of Civil Procedure based on the health care provider's alleged professional negligence, shall be governed by those laws which specifically apply to those professional negligence causes of action."

such misconduct as plaintiffs alleged—intentional, egregious elder abuse—cannot be described as mere "professional negligence" in the ordinary sense of those words. But as defendants point out, in light of our prior pronouncements respecting section 425.13(a), that fact is not necessarily dispositive. (See *Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 191–192 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*).)

In *Central Pathology*, a patient sued a physician and a laboratory, alleging they failed to notify her she was developing cancer when a pap smear the physician performed and sent to the laboratory for analysis revealed the presence of abnormal cells. (*Central Pathology, supra,* 3 Cal.4th at p. 185.) The patient's initial complaint was for negligence in the provision of medical services, but she moved to amend it to add causes of action for fraud and intentional infliction of emotional distress and to seek punitive damages in connection with those claims. Construing section 425.13(a)'s reference to "any action for damages arising out of the professional negligence of a health care provider," we concluded the statute applied to the proposed additional intentional tort causes of action, as well as to the ordinary negligence causes of action already contained in the complaint. (*Central Pathology, supra,* at p. 192.) Were we to hold otherwise, we reasoned, "injured patients seeking punitive damages in an action involving professional negligence could readily assert that their health care providers committed an intentional tort" and thus by "artful pleading" effectively "annul the protection afforded [health care providers] by that section." (*Id.* at p. 191.)

Relying primarily on *Central Pathology*, defendants argue in effect that even egregious elder abuse arises out of professional negligence (§ 425.13(a)) when such abuse is "directly related to the professional services provided" (*Central Pathology, supra,* 3 Cal.4th at p. 191) by a health care provider. Defendants acknowledge that, on its face, section 425.13(a) applies only to causes of action arising from negligence, and that in *Delaney* we distinguished between "professional negligence" and statutory elder abuse. Nevertheless, defendants point out, health care providers can at once be subject to liability under the Elder Abuse Act and protected by section 425.13(a)'s restrictions on the pleading of punitive damages. Because *Central Pathology*'s broad phrasing potentially supports this possibility and *Delaney* does not expressly bar it, defendants urge that we declare it to be the law.

■ Notwithstanding the parties' focus on *Central Pathology* and *Delaney*, resolution of the issue here is not simply an exercise in conforming our result to our previous phraseology. Judicial precedent on similar facts may be relevant, but "[e]stablishing terminological uniformity throughout our codified law is less important than discerning ' "the intent of the Legislature so as

to effectuate the purpose" ' of each individual statute." (*Delaney, supra,* 20 Cal.4th at p. 42.) Ultimately, "the ascertainment of legislative intent is the paramount principle of statutory interpretation." (*In re Michael G.* (1988) 44 Cal.3d 283, 289 [243 Cal.Rptr. 224, 747 P.2d 1152].) For the following reasons, we agree with the Court of Appeal that section 425.13's limitations on actions for damages arising out of professional negligence (§ 425.13(a)) were not meant to burden those who pursue the cause of abused elderly persons (Welf. & Inst. Code, § 15600, subd. (j)) under the Elder Abuse Act.

*Plain language.* First, nothing in the text of either section 425.13(a) or the Elder Abuse Act suggests the Legislature meant to link the two statutes. While section 425.13 by its terms applies only to causes of action arising out of "negligence" (§ 425.13(a)), every cause of action seeking the Act's heightened civil remedies, by definition, arises out of "recklessness, oppression, fraud, or malice" (Welf. & Inst. Code, § 15657). The earlier enacted section 425.13(a), of course, contains no reference to the Elder Abuse Act or to elder abuse; neither does the subsequently enacted Act contain any reference to section 425.13(a).

█ It is true that statutory elder abuse includes "neglect as defined in Section 15610.57" (Welf. & Inst. Code, § 15657), which in turn includes negligent failure of an elder custodian "to provide medical care for [the elder's] physical and mental health needs" (*id.,* § 15610.57, subd. (b)(2)). But as we explained in *Delaney,* "neglect" within the meaning of Welfare and Institutions Code section 15610.57 covers an area of misconduct distinct from "professional negligence." As used in the Act, neglect refers not to the substandard performance of medical services but, rather, to the "failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." (*Delaney, supra,* 20 Cal.4th at p. 34.) Thus, the statutory definition of "neglect" speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care. (*Ibid.*) Notably, the other forms of abuse, as defined in the Act—physical abuse and fiduciary abuse (Welf. & Inst. Code, § 15657)—are forms of intentional wrongdoing also distinct from "professional negligence." (*Delaney, supra,* at p. 34.)

As we determined in *Delaney,* if the neglect (or other abuse) is reckless or done with oppression, fraud, or malice, "then the action falls within the scope of [Welfare and Institution Code] section 15657 and as such cannot be considered simply 'based on . . . professional negligence' . . . . That only these egregious acts were intended to be sanctioned under section 15657 is further underscored by the fact that the statute requires liability to be proved by a heightened 'clear and convincing evidence' standard." (*Delaney, supra,* 20 Cal.4th at p. 35.)

■ Because in *Delaney* we were construing the term "professional negligence" as used in the Elder Abuse Act, our actual holding did not impinge on the holding of *Central Pathology* that professional negligence within the meaning of section 425.13 can encompass intentional torts. (*Central Pathology*, *supra*, 3 Cal.4th at p. 192.) Nevertheless, our conclusion that the Legislature intended the Elder Abuse Act to sanction only egregious acts of misconduct distinct from professional negligence contravenes any suggestion that, in defining "elder abuse" to include failure to provide medical care, the Legislature intended that health care providers, alone among elder custodians, would enjoy under the Act the procedural protections they enjoy when sued for negligence in their professional health care practice. (See *Delaney*, *supra*, 20 Cal.4th at p. 35 [discussing the anomaly of such a result].)

*Legislative history.* ■ Second, nothing in the legislative history of either section 425.13(a) or the Elder Abuse Act suggests the Legislature meant to link the two statutes. Our past pronouncements succinctly describe the relevant history. (See *Central Pathology*, *supra*, 3 Cal.4th at pp. 189–190; *Delaney*, *supra*, 20 Cal.4th at pp. 31–34.)

Section 425.13 was added to the Code of Civil Procedure in 1987. "As originally enacted, the section was not limited to medical malpractice. The statute provided, 'No claim for punitive damages against a health care provider shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed.' (Stats. 1987, ch. 1498, § 7, p. 5782.) The next year the Legislature amended the section by incorporating former section 425.13 into new subdivision (a) of that section and by altering the first sentence to read, 'In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included . . . .' (Stats. 1988, ch. 1205, § 1, p. 4028.)" (*Central Pathology*, *supra*, 3 Cal.4th at pp. 188–189, italics omitted.)

The Legislature enacted the Elder Abuse Act's heightened civil damage remedies for egregious elder abuse three years later, in 1991. (Stats. 1991, ch. 774, § 3, p. 3477 [enacting Sen. Bill No. 679 (1991–1992 Reg. Sess.)].) As we recounted in *Delaney*, in the 1991 amendments to the Act, the Legislature shifted the focus in protecting vulnerable and dependent adults from reporting abuse and using law enforcement to combat it, "to private, civil enforcement of laws against elder abuse and neglect. '[T]he Legislature declared that "infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits." ([Welf. & Inst. Code,] § 15600, subd. (h), added by Stats. 1991, ch. 774,

§ 2.) . . . [Citation]' [Citation.] As was stated in the Senate Rules Committee's analysis of Senate Bill No. 679, 'in practice, the death of the victim and the difficulty in finding an attorney to handle an abuse case where attorneys fees may not be awarded, impedes many victims from suing successfully. [¶] This bill would address the problem by: . . . authorizing the court to award attorney's fees in specified cases; [and by] allowing pain and suffering damages to be awarded when a verdict of intentional and reckless abuse was handed down after the abused elder dies.' (Sen. Rules Com., Analysis of Sen. Bill No. 679 (1991–1992 Reg. Sess.) as amended May 8, 1991, p. 3.)" (*Delaney, supra,* 20 Cal.4th at p. 33.)

■ As we determined in *Central Pathology,* the legislative history of section 425.13 demonstrates that the Legislature's intent in enacting the statute was to protect health care providers (or practitioners) only *in their professional capacity as providers*; there was no intent to protect them in any other capacity. (*Central Pathology, supra,* 3 Cal.4th at p. 189; see also *id.* at p. 190.) Without question, health care provider and elder custodian "capacities" are conceptually distinct. "Health care provider" means any person licensed or certified pursuant to specified licensing provisions and any licensed clinic, health dispensary, or health facility and their legal representatives. (§ 425.13, subd. (b).) Neglectful elder abuse, by contrast, as noted, is "the failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, *regardless of their professional standing*, to carry out their *custodial* obligations." (*Delaney, supra,* 20 Cal.4th at p. 34, italics added.)

Moreover, the legislative history of the Elder Abuse Act "indicates that those who enacted the statute thought that the term 'professional negligence,' . . . within the meaning of [Welfare and Institutions Code] section 15657.2, was mutually exclusive of the abuse and neglect specified in [Welfare and Institutions Code] section 15657" as actionable under the Act. (*Delaney, supra,* 20 Cal.4th at p. 30.) As we have noted, the Legislature apparently concluded that the high standard imposed by section 15657—clear and convincing evidence of (i) liability and (ii) recklessness, malice, oppression or fraud—adequately protects health care providers from liability under the statute for acts of simple or even gross negligence. (*Delaney, supra,* at p. 32.) We are not authorized to gainsay that legislative judgment.[8]

Defendants argue the Legislature's failure expressly to exempt Elder Abuse actions from section 425.13 obliges us to construe the section as including such actions. In support, they contend that elder abuse, when committed by a

---

[8] As we conclude the Legislature did not intend section 425.13 to apply to causes of action seeking heightened remedies under the Elder Abuse Act, we do not reach the additional question raised by plaintiffs whether all defendants were or are health care providers entitled to invoke the protection of section 425.13.

health care provider, is "an injury that is directly related to the professional services provided by a health care provider acting in its capacity as such" (*Central Pathology, supra,* 3 Cal.4th at p. 191). Defendants' argument fails on three counts.

■ First, the rules of statutory construction defendants invoke—viz., that presumably the Legislature knew how to create an exemption if it wished to do so and that courts generally may not insert what the Legislature has omitted from a statute (see *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297])—have no application unless one assumes, at the outset, the facial applicability of section 425.13. But section 425.13(a), which references "professional negligence," is not facially applicable to claims for heightened civil remedies under the Elder Abuse Act, which entail "recklessness, oppression, fraud, or malice" (Welf. & Inst. Code, § 15657, subd. (a)).

Second, elder abuse as defined in the Act, even when committed by a health care provider, is not an injury that is "directly related" to the provider's professional services. That statutory elder abuse may include the egregious withholding of medical care for physical and mental health needs is not determinative. As a failure to fulfill custodial duties owed by a custodian that happens also to be a health care provider, such abuse is at most incidentally related to the provider's professional health care services.

■ That is, claims under the Elder Abuse Act are not brought against health care providers in their capacity as providers but, rather, against custodians and caregivers that abuse elders and that may or may not, incidentally, also be health care providers. Statutorily, as well as in common parlance, the function of a health care provider is distinct from that of an elder custodian, and "the fact that some health care institutions, such as nursing homes, perform custodial functions *and* provide professional medical care" (*Delaney, supra,* 20 Cal.4th at p. 34, italics added) does not mean that the two functions are the same.

Third, the Legislature did not have the benefit of our 1992 opinion in *Central Pathology* either when it limited section 425.13(a) to damage actions arising out of the professional negligence of a health care provider (Stats. 1988, ch. 1205, § 1, p. 4028) or three years later when it added heightened civil remedies to the Elder Abuse Act (Stats. 1991, ch. 774, § 3, p. 3475). Accordingly, regardless of its language, *Central Pathology* affords no basis for concluding the Legislature intended its reference in section 425.13(a) to "professional negligence" to encompass elder abuse, let alone as yet uncreated statutory causes of action for elder abuse committed with recklessness, oppression, fraud, or malice (Welf. & Inst. Code, § 15657). Nor does the

opinion afford any basis for deeming the Legislature to have intended, when adding heightened civil remedies as an incentive to the prosecution of elder abuse actions, that section 425.13(a) restrict the availability of those remedies.[9]

*Statutory purposes.* The fundamental legislative purposes underlying the Elder Abuse Act, on the one hand, and section 425.13, on the other, would not be promoted were we to link the two regimes. Indeed, such linkage actually would undermine the purposes of the Elder Abuse Act.

"The purpose of the [Act was] essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (*Delaney, supra,* 20 Cal.4th at p. 33.) To this end, the Legislature added to the Act heightened civil remedies for egregious elder abuse, seeking thereby "to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (Welf. & Inst. Code, § 15600, subd. (j).) To burden such causes with section 425.13's procedural requirements when claims are made for punitive damages would undermine the Legislature's intent to foster such actions by providing litigants and attorneys with incentives to bring them.

Defendants concede that application of section 425.13 would preclude plaintiffs' punitive damage claim but, they maintain, only because plaintiffs delayed filing their motion for punitive damages until more than two years after they filed suit. Nevertheless, making it more difficult for Elder Abuse Act plaintiffs to plead punitive damages would, as a general matter, likely diminish the willingness of attorneys to undertake such cases on a contingency basis. (See Welf. & Inst. Code, § 15600, subd. (h) [reciting Legislature's observation when enacting Elder Abuse Act that "few civil cases are brought in connection with this abuse due to . . . the lack of incentives to prosecute such suits"].)

Section 425.13(a) "was enacted amid concern over routine inclusion of sham punitive damages claims in medical malpractice actions. The statute apparently seeks to alleviate this problem by shifting to the plaintiff the procedural burden that would otherwise fall on the defendant to remove a

---

[9] With respect to section 425.13(a), in fact, the presumption would be to the contrary. "At the time Senate Bill No. 679 was enacted, the terms 'arising out of professional negligence' and 'based on professional negligence' had been quite narrowly construed." (*Delaney, supra,* 20 Cal.4th at p. 42, fn. 8, citing inter alia *Bommareddy v. Superior Court* (1990) 222 Cal.App.3d 1017, 1024 [272 Cal.Rptr. 246] [which interpreted § 425.13(a) as excluding intentional torts]; *Flores v. Natividad Medical Center* (1987) 192 Cal.App.3d 1106, 1114–1116 [238 Cal.Rptr. 24] [which interpreted the phrase "based on professional negligence" in the Medical Injury Compensation Reform Act to exclude failure to summon medical care pursuant to Gov. Code, § 845.6].)

'frivolous' or 'unsubstantiated' claim early in the suit." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 717 [34 Cal.Rptr.2d 898, 882 P.2d 894]; see also *id.* at p. 719 [motion required by § 425.13(a) "operates like a demurrer or motion for summary judgment in 'reverse' "].) More specifically, section 425.13(a) "was designed to address two problems. First, the Legislature sought in all cases to require greater certainty of the propriety of imposing punitive damages by requiring clear and convincing evidence of fraud, malice, or oppression and by modifying the definition of malice to include despicable, willful conduct. [¶] Second, because it was concerned that unsubstantiated claims for punitive damages were being included in complaints against health care providers, the Legislature sought to provide additional protection by establishing a pretrial hearing mechanism by which the court would determine whether an action for punitive damages could proceed." (*Central Pathology, supra,* 3 Cal.4th at p. 189.)

Applying section 425.13 to Elder Abuse Act causes of action would not significantly heighten the "certainty of the propriety of imposing punitive damages" (*Central Pathology, supra,* 3 Cal.4th at p. 189), because a plaintiff prosecuting a claim for heightened civil remedies under the Elder Abuse Act is required in any event to plead and to prove by clear and convincing evidence "recklessness, oppression, fraud, or malice" (Welf. & Inst. Code, § 15657). Thus, with or without application of section 425.13(a), a health care provider sued for violating the Elder Abuse Act must defend against allegations of egregious conduct.

Neither would applying section 425.13 to Elder Abuse Act causes of action afford health care providers significant additional protection against the type of unsubstantiated claims for punitive damages that concerned the Legislature when it enacted section 425.13(a). As we have noted, the fundamental problem section 425.13 seeks to address arises because the kinds of negligent acts supporting a malpractice cause of action might also support a cause of action for an intentional tort, such that plaintiffs might through artful pleading "sidestep" the section by including an intentional tort cause of action in a negligence action and thereby annul the protection the Legislature intended to afford health care providers in the medical malpractice context. (*Central Pathology, supra,* 3 Cal.4th at pp. 191, 192.) No analogous threat looms here; praying for punitive damages in an action based on a violation of the Elder Abuse Act does not substantively transform the action as does adding an intentional tort claim in a malpractice action. While "minimally culpable defendants are often charged with intentional torts" (*Far West Financial Corp. v. D & S Co.* (1988) 46 Cal.3d 796, 830 [251 Cal.Rptr. 202, 760 P.2d 399] (conc. & dis. opn. of Eagleson, J.)) supporting punitive damage claims, elder abuse triggering the Act's heightened remedy provisions entails by its nature egregious conduct. (Welf. & Inst. Code, §§ 15657, 15610.30, 15610.57, 15610.63.) And while in the medical malpractice context "there

may be considerable overlap of intentional and negligent causes of action" (*Central Pathology, supra*, at p. 192), no such overlap occurs in the Elder Abuse Act context, where the Legislature expressly has excluded ordinary negligence claims from treatment under the Act (Welf. & Inst. Code, § 15657.2; *Delaney, supra*, 20 Cal.4th at p. 30).[10]

In order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages. (Compare Welf. & Inst. Code, § 15657 [requiring "clear and convincing evidence that a defendant is liable for" elder abuse and "has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse"] with Civ. Code, § 3294, subd. (a) [requiring "clear and convincing evidence" that the defendant has been guilty of oppression, fraud, or malice].) Accordingly, that plaintiffs in an Elder Abuse Act action may, on appropriate proof (Civ. Code, § 3294, subd. (a)), recover punitive damages entails no danger directly analogous to the danger that exists when " 'punitive damages may be awarded on what is traditionally considered a negligence cause of action' " (*Central Pathology, supra*, 3 Cal.4th at p. 190).

Section 425.13(a) also contains timing requirements, including the requirement at issue in this case that any motion under the statute be "filed within two years after the complaint or initial pleading is filed . . . ." The purpose of this requirement is to provide a health care provider with adequate notice of a punitive damages claim, as well as to prevent "last minute" insertion of punitive damages issues into a case that has been prepared for trial without consideration of such, and past the time when positions and discovery issues have become fixed. (*Goodstein v. Superior Court* (1996) 42 Cal.App.4th 1635, 1642 [50 Cal.Rptr.2d 459].) As discussed, however, in any Elder Abuse Act action issues of egregious conduct are by definition always present, so a defendant has the relevant notice from the outset.

*Judicial precedent.* To the extent we are presented in this case with the necessity of choosing between application of *Central Pathology*'s holding to facts only at its outer reaches and *Delaney*'s well-documented understanding of the Elder Abuse Act's subject matter and purposes, we choose the latter.

---

[10] In so noting, we have no occasion to decide whether or on what theory a plaintiff may be able to obtain common law remedies for ordinary negligence that also constitutes neglect as defined in the Elder Abuse Act. (See, e.g., *Norman v. Life Care Centers of America, Inc.* (2003) 107 Cal.App.4th 1233, 1242–1243 [132 Cal.Rptr.2d 765].)

Where the gravamen of an action is violation of the Elder Abuse Act, *Central Pathology*'s rationale for applying section 425.13 to the common law intentional torts at issue in that case does not obtain. In contrast with *Central Pathology*, this case cannot be resolved by application of the principle "that a statute should not be interpreted in a manner that would lead to absurd results" (*Central Pathology, supra,* 3 Cal.4th at p. 191), because neither of the possible results—i.e., that section 425.13 applies to Elder Abuse Act claims or that it does not—is absurd. Thus, in declining to apply section 425.13, the courts below did not by implication "render the statute virtually meaningless" (*Central Pathology, supra,* at p. 191). *Central Pathology* itself guarantees that, notwithstanding our affirmance of the Court of Appeal's judgment in this case, section 425.13 will continue to apply to a broad range of intentional torts typically pled in medical malpractice cases. (See *Central Pathology, supra,* at p. 184.)

Defendants fail to acknowledge the factual aspects of *Central Pathology* that qualify its holding, including that the case addressed common law causes of action for fraud and intentional infliction of emotional distress that arose in the medical malpractice context. (*Central Pathology, supra,* 3 Cal.4th at pp. 185, 192.)[11] While *Central Pathology* thus speaks to situations in which claims for punitive damages are, as a factual matter, "predicated on mere negligence or a conscious disregard of the rights or safety of others" in which intentional torts are nevertheless alleged (*Central Pathology, supra,* at p. 191), its rationale does not extend to situations, as here, in which a claim for punitive damages accompanies allegations of a statutory violation, proof of which will require clear and convincing evidence the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of physical, neglectful, or financial elder abuse. (See Welf. & Inst. Code, §§ 15657, 15610.30, 15610.57, 15610.63.)

In light of the general rule that statutory causes of action must be pleaded with particularity (*Lopez v. Southern Cal. Rapid Trans. Dist.* (1985) 40 Cal.3d 780, 795 [221 Cal.Rptr. 840, 710 P.2d 907]), a rule plaintiffs' fourth amended complaint satisfies, we cannot conclude, as we concluded in *Central Pathology* when considering section 425.13's application to common law intentional torts, that the Legislature intended the statute to apply in an action under the Elder Abuse Act.

---

[11] It is axiomatic that an unnecessarily broad holding is "informed and limited by the fact[s]" of the case in which it is articulated. (*Cassista v. Community Foods, Inc.* (1993) 5 Cal.4th 1050, 1061 [22 Cal.Rptr.2d 287, 856 P.2d 1143]; see generally *id.* at p. 1057; *Thor v. Superior Court* (1993) 5 Cal.4th 725, 743 [21 Cal.Rptr.2d 357, 855 P.2d 375].)

*Disposition*

The judgment of the Court of Appeal is affirmed.[12]

George, C. J., Kennard, J., Baxter, J., Brown, J., Moreno, J., and Rylaarsdam, J.,[*] concurred.

---

[12] To the extent it is inconsistent with our opinion here, *Community Care & Rehabilitation Center v. Superior Court, supra*, 79 Cal.App.4th 787, is disapproved.

[*]Associate Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.