[No. B172019. Second Dist., Div. Seven. June 7, 2004.]

COUNTRY VILLA CLAREMONT HEALTHCARE CENTER, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.
ARTHUR RODRIGUEZ et al., Real Parties in Interest.

## COUNSEL

Morris, Polich & Purdy, Marc Katz, Richard H. Nakamura and Bryan Carney for Petitioner.

No appearance for Respondent.

Maher, Guiley & Maher, Steven R. Maher, John Ksajikian; Esner & Chang, Andrew N. Chang and Stuart B. Esner for Real Parties in Interest.

## OPINION

**ZELON, J.**—Real parties Arthur Rodriguez et al. (real parties), successors in interest and heirs of decedent Ernestina Rodriguez (decedent), brought an elder abuse and wrongful death action against two skilled nursing facilities,[1] defendant Country Oaks Nursing Center operated by Trinity Oakland, Inc. (Trinity) and defendant-petitioner Country Villa Claremont Healthcare Center,

---

[1] " 'Skilled nursing facility' means a health facility that provides skilled nursing care and supportive care to patients whose primary need is for availability of skilled nursing care on an extended basis." (Health & Saf. Code, § 1250, subd. (c).)

Inc. (Country Villa). In the original complaint, real parties sought punitive damages in their action for damages under the heightened civil remedies of the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15600 et seq.) (Elder Abuse Act). Trinity and Country Villa each moved to strike punitive damages claims on the grounds that real parties failed to comply with Code of Civil Procedure section 425.13, subdivision (a)[2] (section 425.13(a)). Respondent Los Angeles County Superior Court sustained Trinity's motion and denied Country Villa's motion.

■ Country Villa seeks a peremptory writ of mandate directing the trial court to vacate its order denying Country Villa's motion to strike punitive damages. We issued an order to show cause and set the matter for hearing. On March 25, 2004, while the petition was pending, the Supreme Court issued its decision in *Covenant Care Inc. v. Superior Court* (2004) 32 Cal.4th 771 [11 Cal.Rptr.3d 222, 86 P.3d 290] (*Covenant Care*), and resolved the conflict among the Courts of Appeal as to whether section 425.13(a) applies to punitive damage claims in actions arising under the Elder Abuse Act. We invited the parties to further brief the impact of *Covenant Care* on the instant petition. Having reviewed the pleadings and record, and having heard oral argument, we deny the relief requested. We conclude that section 425.13(a) is inapplicable to punitive damage claims in actions where the gravamen of the claims is elder abuse subject to heightened civil remedies under the Elder Abuse Act.

## FACTUAL AND PROCEDURAL BACKGROUND

*FACTS*

From November 2002 to January 2003, decedent, a 76-year-old woman and an elder,[3] was a resident at Trinity. Decedent suffered from severe pain of her left leg and was identified as a high-risk candidate for developing pressure ulcers. Despite a physician's order to administer Celebrex, a drug known by Trinity to be effective in relieving decedent's pain, decedent rarely received the drug. Neither did Trinity implement the necessary protocol to prevent decedent from developing pressure ulcers. Trinity also failed to notify decedent's physician that she complained of pain. Consequently, decedent's condition deteriorated with the development of severely painful pressure ulcers in both heels and a black blister on her left heel.

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] " 'Elder' means any person residing in this state, 65 years of age or older." (Welf. & Inst. Code, § 15610.27.)

In January 2003, in a worsened condition, decedent was transferred to Pomona Valley Hospital Medical Center. She was diagnosed with osteomyelitis[4] of the left heel and infections in the wounds of both heels. In the next month, decedent underwent debridement[5] of her wounds and amputation of her gangrened left leg below the knee. Decedent also required intravenous antibiotics, extensive skilled nursing and rehabilitation.

Upon discharge from the hospital, from March to December 2003, decedent was a resident at Country Villa. While there, the pressure ulcer on her right heel worsened, because Country Villa failed to provide adequate pressure relief. She also suffered a painful fall when Country Villa's staff dropped her. Country Villa additionally failed to provide for decedent's personal hygiene, leaving her in filthy and unsanitary conditions. Decedent further developed aspirational pneumonia as a result of Country Villa's failure to provide her with the proper diet of pureed food, monitor her food intake, and assist with her eating. On December 8, 2003, decedent died from respiratory failure, aspirational pneumonia, bulbar dysfunction and Parkinsonism.

*PROCEDURE*

Real parties sued Trinity and Country Villa for willful misconduct, negligence, violation of residents' rights, fraudulent concealment, elder abuse, unfair business practices, and wrongful death. The original complaint's prayer for relief did not identify the causes of action for which real parties sought punitive damages, but sought them as to "those causes of action not covered by . . . [section] 425.13." Without distinguishing between Trinity and Country Villa, the alleged custodial care deficiencies by both defendants included the failure to assist decedent with hygiene, the failure to provide decedent with food, adequate hydration and pressure relief so as to prevent formation and worsening of pressure sores, and the failure to protect decedent from health and safety hazards.

Trinity and Country Villa moved to strike the punitive damages claim for real parties' failure to comply with section 425.13(a). Relying on *Community Care & Rehabilitation Center v. Superior Court* (2000) 79 Cal.App.4th 787 [94 Cal.Rptr.2d 343] (*Community Care*), disapproved in part in *Covenant Care, supra,* 32 Cal.4th at page 791, footnote 12, defendants argued that elder abuse claims are not exempt from the procedural requirements of section 425.13(a).

---

[4] Osteomyelitis is "an infectious inflammatory disease of bone often of bacterial origin that is marked by local death and separation of tissue." (Merriam Webster's Collegiate Dict. (10th ed. 1995) p. 823, col. 1.)

[5] Debridement is "the surgical removal of lacerated, devitalized, or contaminated tissue." (Merriam Webster's Collegiate Dict., *supra,* p. 297, col. 1.)

Real parties opposed both motions to strike, asserting their claims were of improper "custodial care" and as such were not subject to section 425.13(a). On October 29, 2003, the trial court, in spite of essentially identical allegations as to each of the parties, granted Trinity's motion and denied Country Villa's motion in its minute order: "In sum, I find that the holdings in *Community Care* governs (*sic*) and that CCP 425.13 applies where a plaintiff's claims are based in any substantial part on a breach of professional duty. [¶] As to defendant Country Villa Claremont, the complaint is not based to any substantial degree on professional malpractice. . . . Therefore, CCP 425.13 does not apply and it[s] motion to strike is denied. [¶] As to defendant Trinity Oakland . . . , a substantial part of the claims against them are based on the exercise of professional judgment. . . . Therefore CCP 425.13 applies and the Motion to Strike the punitive damages claim is granted. . . ."

In the second amended complaint, real parties prayed for punitive and exemplary damages against all defendants except Trinity.

Country Villa seeks a peremptory writ of mandate directing the trial court to vacate its order denying petitioner's motion to strike the punitive damages claim. In its moving papers, Country Villa cited *Community Care* as its primary authority in asserting the applicability of section 425.13(a) to elder abuse cases. Real parties' return and opposition argued that *Community Care* addressed issues only related to "professional" and not "custodial" services, and section 425.13(a) was, therefore, not applicable to Country Villa.

After the Supreme Court issued its decision in *Covenant Care, supra*, 32 Cal.4th 771, Country Villa's supplemental brief acknowledged its holding relieves real parties from complying with section 425.13(a) on their statutory cause of action for elder abuse, but continued to assert that compliance with section 425.13 is required as to common law causes of action such as fraud and willful misconduct. Real parties' supplemental brief asserted that *Covenant Care* is plainly dispositive of the issues raised in this petition and the trial court's ruling is correct.

## DISCUSSION

■ Section 425.13(a)[6] requires plaintiffs in an action arising from the professional negligence of a licensed health care provider to obtain a court

---

[6] "In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. The court may allow the filing of an amended pleading claiming punitive damages on a motion by the party seeking the amended pleading and on the basis of the supporting and opposing affidavits presented that the plaintiff has established that there is a

order before including a claim for punitive damages in the complaint. Section 425.13(a) applies to intentional torts as well as negligence causes of action. (*Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 192 [10 Cal.Rptr.2d 208, 832 P.2d 924] (*Central Pathology*).) For the punitive damages claim to be included in the complaint, there must be a finding of substantial evidence that the defendant is liable under Civil Code section 3294.[7]

■ Elder abuse claims are unique, however, because they are based on custodial neglect rather than professional negligence. (Welf. & Inst. Code, §§ 15610.57, 15657.2.) " 'Abuse of an elder or a dependent adult' means either of the following: [¶] (a) Physical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering. [¶] (b) The deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." (Welf. & Inst. Code, § 15610.07.)

In *Delaney v. Baker* (1999) 20 Cal.4th 23, 40 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*), the Supreme Court explained the Elder Abuse Act is "a very different statutory scheme from section 425.13(a) discussed in *Central Pathology*." The Elder Abuse Act's remedial purpose is to "protect[] elder and dependent adults who are residents of nursing homes and other health care facilities from reckless neglect and various forms of abuse." (*Ibid.*)

"In order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages. (Compare Welf. & Inst. Code, § 15657 [requiring 'clear and convincing evidence that a defendant is liable for' elder abuse and 'has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse'] with Civ. Code, § 3294, subd. (a) [requiring 'clear and convincing evidence' that the defendant has been guilty of oppression, fraud, or malice].) Accordingly, that plaintiffs in an Elder Abuse Act action may, on appropriate proof (Civ. Code, § 3294, subd. (a)), recover punitive damages entails no danger directly analogous to the danger that exists when ' "punitive damages may be awarded on what is traditionally considered a negligence cause of

---

substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294 of the Civil Code. The court shall not grant a motion allowing the filing of an amended pleading that includes a claim for punitive damages if the motion for such an order is not filed within two years after the complaint or initial pleading is filed or not less than nine months before the date the matter is first set for trial, whichever is earlier." (§ 425.13(a).)

[7] "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294, subd. (a).)

action." ' (*Central Pathology, supra,* 3 Cal.4th at p. 190)." (*Covenant Care, supra,* 32 Cal.4th at p. 789.)

Prior to *Covenant Care,* there was a split of authority on the question of whether section 425.13 applies to actions under the Elder Abuse Act. Division Two of the Fourth District held those claims are not exempt from section 425.13. (*Community Care, supra,* 79 Cal.App.4th 787, 798, disapproved in part in *Covenant Care, supra,* 32 Cal.4th at p. 791, fn. 12.) Division One of this District held they are exempt. (*Covenant Care, Inc. v. Superior Court* (2001) 89 Cal.App.4th 928, 932 [107 Cal.Rptr.2d 291], affd. and superseded by *Covenant Care, supra,* 32 Cal.4th 771.) The Supreme Court granted review to resolve the conflict. (*Covenant Care, supra,* 32 Cal.4th at p. 776.)

In *Covenant Care,* the gravamen of plaintiffs' claims, including nonstatutory causes of action such as willful misconduct and fraud, was violation of the Elder Abuse Act. There, plaintiffs sued a skilled nursing facility for damages caused by its care and treatment of their deceased father during the approximately eight weeks he resided at the facility. Decedent was deprived of essential care, treatment, medical services, food, fluids, medicine, and basic nursing care including palliative care. Defendants knew decedent was suffering from Parkinson's disease and was unable to care for his personal needs, yet they nonetheless failed to provide him with proper care, nutrition, hydration and medication. Decedent was left in his bed, unattended and unassisted, for long periods of time. He received no support with eating and drinking, became malnourished and lost much of his body weight. Left in his excrement, decedent developed ulcers on his body that exposed muscle and bone and became septic. He manifested signs and symptoms of starvation, dehydration, neglect and abuse. Defendants concealed these deteriorating conditions from plaintiffs and public authorities. Without any care for his acute needs, decedent languished and died. (*Covenant Care, supra,* 32 Cal.4th at p. 778.)

More than two years after filing their initial complaint, the *Covenant Care* plaintiffs moved for leave to file a fourth amended complaint. In their proposed fourth amended complaint, plaintiffs sought damages, including general damages for pain and suffering according to proof, for willful misconduct, intentional infliction of emotional distress, constructive fraud, fraud, battery, false imprisonment, elder abuse, and wrongful death. They also sought punitive damages. Defendants opposed plaintiffs' motion for leave to amend the complaint, arguing that under section 425.13(a), which requires such a motion be "filed within two years after the complaint or initial pleading is filed," it was untimely. (*Covenant Care, supra,* 32 Cal.4th at p. 778.)

The holding in *Covenant Care* was dispositive: "[w]here the gravamen of an action is violation of the Elder Abuse Act . . . applying section 425.13 to the common law intentional torts at issue in that case does not obtain." (*Covenant Care, supra,* 32 Cal.4th at p. 790.)

█ *Covenant Care* explained that nothing in the language, legislative history and statutory purposes of either section 425.13(a) or the Elder Abuse Act suggests the Legislature meant to link the two statutes. (*Covenant Care, supra,* 32 Cal.4th at pp. 783–784, 787.) "The fundamental legislative purposes underlying the Elder Abuse Act, on the one hand, and section 425.13 on the other, would not be promoted" if the two regimes were to be linked. (*Id.* at p. 787.) " 'The purpose of the [Elder Abuse Act was] essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect.' (*Delaney, supra,* 20 Cal.4th at p. 33.) To this end, the Legislature added to the Act heightened civil remedies for egregious elder abuse, seeking thereby 'to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults.' (Welf. & Inst. Code, § 15600, subd. (j).) To burden such causes with section 425.13's procedural requirements when claims are made for punitive damages would undermine the Legislature's intent to foster such actions by providing litigants and attorneys with incentives to bring them." (*Ibid.*)

The *Covenant Care* court further distinguished between the application of *Central Pathology*'s holding "to facts only at its outer reaches" and *Delaney*'s "well-documented understanding of the Elder Abuse Act's . . . purposes. . . ." (*Covenant Care, supra,* 32 Cal.4th at p. 789.) "While *Central Pathology* . . . speaks to situations in which claims for punitive damages are, as a factual matter, 'predicated on mere negligence or a conscious disregard of the rights or safety of others' in which intentional torts are nevertheless alleged (*Central Pathology, supra,* at p. 191), its rationale does not extend to situations, as here, in which a claim for punitive damages accompanies allegations of a statutory violation, proof of which will require clear and convincing evidence the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of physical, neglectful, or financial elder abuse. (See Welf. & Inst. Code, §§ 15657, 15610.30, 15610.57, 15610.63.)" (*Covenant Care, supra,* 32 Cal.4th at p. 790.)

Analogous to *Covenant Care,* in the instant case, the gravamen of real parties' claims, both statutory and nonstatutory, is elder abuse. Real parties seek punitive damages for negligence, willful misconduct, fraud, wrongful death, and various intentional torts arising from the elder abuse violations. Here, upon admission, Country Villa knew that decedent had undergone amputation of one foot, suffered from osteomyelitis and pressure ulcers.

Nonetheless, during the approximately nine months of decedent's residency there, Country Villa failed to provide adequate pressure relief causing the pressure ulcer on her right heel to worsen. Country Villa's staff also dropped decedent, so that she suffered a painful fall. Country Villa additionally failed to provide for decedent's personal hygiene by leaving her in filthy and unsanitary conditions. Though decedent required assistance with eating, Country Villa did not provide her with the proper diet of pureed food, monitor her food intake, and assist with her eating. Country Villa further failed to report decedent's deteriorating conditions to real parties and public authorities. Without any care for her acute needs, decedent developed aspirational pneumonia and died.

■ Consistent with the holding in *Covenant Care*, because the gravamen of the instant action is violation of the Elder Abuse Act, section 425.13 is inapplicable to the common law intentional torts at issue. (*Covenant Care, supra*, 32 Cal.4th at p. 779.) Accordingly, we hold that section 425.13(a) does not apply to punitive damage claims in real parties' elder abuse action against Country Villa.

## DISPOSITION

The petition for writ of mandate is denied. The order to show cause, having served its purpose, is discharged. The matter is remanded to the superior court for further proceedings. Real parties shall recover their costs of petition from Country Villa.

Johnson, Acting P. J., and Woods, J., concurred.