Filed 3/16/22  Williams v. ValleyCare Medical Center CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL WILLIAMS,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>VALLEYCARE MEDICAL CENTER et al.,<br><br>      Defendants and Respondents. | A162713<br><br>(Alameda County<br>Super. Ct. No. RG19-044042) |

Plaintiff Michael Williams, M.D., appeals a judgment entered in favor of defendants ValleyCare Medical Center (also known as Stanford Health Care – Valley Care) and ValleyCare Medical Foundation, Inc. He contends the trial court erred by sustaining defendants' demurrer to his first amended complaint for intentional infliction of emotional distress and elder abuse. We find no error and affirm the judgment.

**Background**

In November 2019, plaintiff filed a complaint alleging causes of action against for false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and elder abuse. In August 2020, the court overruled defendants' demurrer to the causes of action for false imprisonment and negligent infliction of emotional distress but sustained

1

with leave to amend the demurrer to the causes of action for intentional infliction of emotional distress and elder abuse.

In September 2020, plaintiff filed a first amended complaint (hereafter complaint) realleging the above causes of action. As relevant here, the complaint alleges that plaintiff was admitted as a patient at ValleyCare Medical Center (hereafter hospital) after being diagnosed with bacterial pneumonia causing congestive heart failure. Plaintiff's treating doctor pierced plaintiff's right femoral artery while performing an allegedly unwanted angiogram procedure. After the procedure, plaintiff and his wife "requested that he be transferred to another hospital many times" but the treating doctor refused the transfer. Plaintiff alleges that in retaliation for complaining and requesting a transfer, he was subjected to substantial emotional abuse.

Plaintiff's cause of action for intentional infliction of emotional distress identifies the following allegedly outrageous conduct committed by defendants' employees either recklessly or with the intent to cause him emotional distress. Paragraph 23 reads, "Commencing November 6, 2019, almost daily until he was transferred on or about November 25, 2019, when plaintiff would call for help to use the restroom, plaintiff was made to wait for assistance to use the restroom. As a result, plaintiff became incontinent while waiting for assistance. He would then have to wait for a half hour up to [two] and one-half hours for someone to clean him. On more than one occasion, when plaintiff asked for help to be cleaned, a staff person threw a dirty wipe at his face. Plaintiff, while waiting for assistance, would hear the nurses at the nurses' station outside his room talking and laughing right outside of his hospital room. It was clear that while staff was available right outside his room and could take steps to address his hygiene, instead, staff mocked him

2

by ignoring him and doing nothing. On November 14, 2019, plaintiff's wife arrived and saw nurses and doctors outside plaintiff's room. Plaintiff was calling for help and they ignored him. Plaintiff's wife walked in with one of the administrators and found plaintiff soaked in urine. He had been eating and food had fallen into his lap and the food was also soaked. Plaintiff appeared embarrassed and completely exposed feeling helpless. He had been in that condition for over one hour. When plaintiff's wife complained to medical staff about the lack of care plaintiff was receiving, defendant's staff contacted police, arguing that plaintiff's wife was disturbing the peace. Officers came and aggressively threw her to the ground in front of plaintiff, causing him further severe emotional distress and fearing further that no one would be there to protect him." Paragraph 24 adds, "These acts further include but are not limited to denying plaintiff access to the medical care and physicians in another hospital, placing him in isolation 'solitary confinement' and denying him access to visitors and his wife who had the right to make healthcare decisions on his behalf, and then utilizing security or other law enforcement personnel to batter his wife in his presence while he was in a hospital bed with life supports, bleeding and suffering an enlarged hematoma and unable to walk and physically and emotionally vulnerable and susceptible to emotional distress."

Plaintiff's cause of action for elder abuse alleges that defendants denied and withheld "services necessary to meet the plaintiff's basic needs and comforts, with knowledge that the withholding of essential hygiene as set forth in paragraph 23 above, was substantially certain to cause him injury, both emotional and physical, and was a failure of those responsible for attending to his basic needs and comfort in order to carry out their custodial responsibilities."

The trial court sustained defendants' demurrer to the causes of action for intentional infliction of emotional distress and elder abuse. The court explained that the facts alleged in the complaint "would support a claim for negligence, but they do not rise to the level of 'extreme and outrageous conduct' " necessary to support a claim for intentional infliction of emotional distress. With respect to the claim for elder abuse, the court again noted that the allegations "would support a claim for negligence, but they do not allege that defendant acted 'either with knowledge that injury was substantially certain to befall the elder . . . or with conscious disregard of the high probability of such injury.' "

Thereafter, plaintiff requested the remaining causes of action be dismissed without prejudice and filed a notice of appeal from the judgment with prejudice entered in favor of the hospital.[1]

## Discussion

### 1. *Standard of Review*

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. [Citations.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to

---

[1] Plaintiff's causes of action for false imprisonment and negligent infliction of emotional distress were added by an amendment to a pending complaint alleging causes of action for racial discrimination, fraud, battery, medical battery, and Penal Code violations. (Super. Ct. Alameda County, No. RG20-079779.)

4

constitute a cause of action." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

### 2. *Intentional Infliction of Emotional Distress*

To state a claim for intentional infliction of emotional distress, a plaintiff must plead: " ' " ' "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050.) "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' " (*Id.* at pp. 1050–1051.) "Liability for intentional infliction of emotional distress ' "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." ' " (*Id.* at p. 1051.)

Whether conduct is outrageous "is 'usually' a question of fact, [but] many cases have dismissed intentional infliction of emotional distress cases on demurrer, concluding that the facts alleged do not amount to outrageous conduct as a matter of law." (*Barker v. Fox & Associates* (2015) 240 Cal.App.4th 333, 356.)

Plaintiff's allegations can be separated into two related categories of conduct. First, he alleges that he was made to wait to relieve himself or to be cleaned after soiling himself despite the apparent availability of the nursing staff to assist him and that the staff was rude and disrespectful when they finally arrived to assist him with his hygiene. Second, he alleges that the staff improperly reacted to his wife's complaints about his care by calling the police, which resulted in her being physically restrained and arrested by the

5

police and then barred from entering the hospital. Plaintiff suggests that this conduct is sufficiently outrageous given his "vulnerable" condition following the "butchery" of his femoral artery during the unauthorized angiogram procedure.

While a plaintiff's special susceptibility to emotional distress is a factor that may be considered in determining whether the alleged conduct was outrageous (*Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1226), we question whether plaintiff's condition here, including the medical error which is alleged to have occurred, makes him more vulnerable than any other patient in the hospital with a serious medical condition. Nonetheless, even assuming that plaintiff, as a patient in a hospital, is particularly susceptible to emotional distress, the conduct alleged is not sufficiently extreme and outrageous to support a cause of action for intentional infliction of emotional distress.

As the trial court noted, the alleged failure to timely respond to plaintiff's hygiene needs, as alleged here, may support a negligence claim but is insufficient to support a claim for intentional infliction of emotional abuse. (*Teague v. Home Ins. Co.* (1985) 168 Cal.App.3d 1148, 1151–1152 ["Mere assertions of delay in the . . . the providing of medical treatment do not describe conduct which is deemed outrageous and extreme."].) At most, the complaint alleges delays of between 30 minutes and 2.5 hours. Such delays, even if intended to be retaliatory, are not outrageous, atrocious or beyond the bounds of decency. "[I]t is 'not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the

6

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496.) Similarly, plaintiff's allegation that the nurses threw wipes in his face, if proven, undoubtedly reflects unprofessional and rude conduct. It is, however, more akin to an insult or an indignity, which is not actionable.

The allegations involving the physical restraint and arrest of his wife by police and her subsequent exclusion from the hospital are similarly not sufficient to support his cause of action. Defendants' staff did not physically restrain plaintiff's wife. They called to police to report a disturbance. How the police responded is within the discretion of the police, not the staff. The subsequent exclusion of plaintiff's wife from the hospital after the incident was also not extreme and outrageous.

*3. Elder Abuse*

The Elder Abuse and Dependent Adult Civil Protection Act (the Elder Abuse Act or the Act) (Welf. & Inst. Code, § 15600 et seq.) provides heightened remedies for the "neglect" of an elder or dependent adult where the defendant "has been guilty of recklessness, oppression, fraud, or malice" in the commission of the neglect. (§§ 15610.07, subd. (a), 15657.) As pertinent here, the Act defines neglect as "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise" including the "[f]ailure to assist in personal hygiene." (§ 15610.57, subds. (a)(1) & (b)(1).) "Oppression, fraud and malice 'involve "intentional," "willful," or "conscious" wrongdoing of a "despicable" or "injurious" nature.' [Citation.] Recklessness involves ' "deliberate disregard" of the "high degree of probability" that an

7

injury will occur' and 'rises to the level of a "conscious choice of a course of action . . . with knowledge of the serious danger to others involved in it." ' " (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 405 (*Carter*); *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 789 ["In order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages."].)

Although oppression and recklessness are often a jury question, a demurrer may be sustained where facts alleged in the complaint do not show the requisite culpable or reckless conduct by defendant. (See *Carter, supra*, 198 Cal.App.4th at p. 407 [demurrer properly sustained where conduct alleged was not "sufficiently egregious to constitute neglect . . . within the meaning of the Elder Abuse Act"]; *Alexander v. Scripps Memorial Hosp. La Jolla* (2018) 23 Cal.App.5th 206, 223 [same].) Plaintiff's conclusory allegations that the staff acted "maliciously and with the intent to oppress plaintiff" and that "defendants acted "with recklessness" are insufficient to support a cause of action for elder abuse. (See *Carter, supra*, at pp. 407, 412–413 [facts constituting Elder Abuse Act neglect must be pleaded with particularity; willful misconduct allegations deficient because plaintiffs did not "allege[] facts, as opposed to conclusions or contentions," indicating hospital acted with deliberate indifference].)

As discussed above, the conduct alleged, even if inappropriate or negligent, was not such as to reflect an intention to inflict harm or reckless indifference to that possibility. Nothing in the complaint supports plaintiff's claim that delaying up to two and a half hours to assist plaintiff with his hygiene, even if done with a retaliatory motive, was intended to cause plaintiff serious injury. Nor does the complaint allege facts showing that

defendants' staff deliberately disregarded the likelihood that plaintiff would suffer a serious injury.

The cases relied on by plaintiff are clearly distinguishable. For example, in *Covenant Care v. Superior Court, supra,* 32 Cal.4th at pages 777–778, the court held that plaintiff could proceed under the Act based on allegations that defendant "acted with malice and oppression" by leaving the patient "in his bed, unattended and unassisted, for excessively long periods" including being left in "his excrement" for long enough periods of time that "he developed ulcers on his body that exposed muscle and bone and became septic." Similarly, in *Delaney v. Baker* (1999) 20 Cal.4th 23, 27, the court affirmed a jury's finding that defendant had been reckless in allowing an 88-year-old woman to be "left lying in her own urine and feces" for such an "extended period[] of time" and at such frequency that tissue on her ankles, feet, and buttocks "had been eaten away down to the bone." The neglect detailed in these cases on which plaintiff relies occurred over eight weeks in the first case and four months in the second case, during which times the injurious nature of the neglect became increasingly apparent.[2]

Defendant's failure to act in *Delaney* and *Covenant Care* demonstrated a " ' "deliberate disregard" of the "high degree of probability" that an injury will occur' and 'rises to the level of a "conscious choice of a course of action . . .

_____

[2] Similarly, other cases holding evidence of patient neglect sufficient to constitute actionable elder abuse involved neglect over far longer periods of time. (E.g., *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 90 [failure to follow case plan, check patient's skin condition on daily basis, notify physician of need for treatment order over three-year period]; *Country Villa Claremont Healthcare Center, Inc. v. Superior Court* (2004) 120 Cal.App.4th 426, 435 [failure to provide adequate pressure relief worsening condition of pressure ulcer over approximately nine months]; *Benun v. Superior Court* (2004)123 Cal.App.4th 113, 116 [failure to provide adequate custodial care between March 1998 and December 2001].)

with knowledge of the serious danger to others involved in it." ' " (*Carter, supra,* 198 Cal.App.4th at p. 405.) In contrast, plaintiff's complaint alleges that the retaliatory conduct began on November 10, 2019, when he requested a transfer and continued until he was transferred on November 25. Throughout that time, plaintiff's hygiene was attended to, albeit at times with a limited but allegedly unnecessary delay. Without diminishing plaintiff's discomfort, the delay alleged in this case, which occurred over a period of no more than15 days and resulted in no physical injury, does not reflect reckless or intentionally injurious conduct. (See *Alexander v. Scripps Memorial Hospital La Jolla*, *supra,* 23 Cal.App.5th at pp. 223–224 ["Unlike cases in which elder abuse is properly pleaded because the patient was abandoned or ignored for extended periods of time," complaint merely alleged that family members disagreed with "the frequency and quantity of the medication, hydration, and nutrition" their mother was receiving.].)

Plaintiff does not suggest that any deficiencies in the complaint could be cured by amendment. Accordingly, the trial court did not err in sustaining the demurrers without leave to amend.

## Disposition

The judgment is affirmed. Defendants shall recover their costs on appeal.

POLLAK, P. J.

I CONCUR:

DESAUTELS, J.*

---

* Judge of the Superior Court of California, County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

STREETER, J., Concurring and Dissenting.

While otherwise concurring, I must respectfully dissent from the majority's decision to affirm the dismissal of the Elder Abuse Act[3] claim. In my view, we are not being faithful to the language of the Act or to its purpose.

"Neglect" under the Elder Abuse Act, by its plain terms, specifically includes "[f]ailure to assist in personal hygiene." (§ 15610.57, subd. (b)(1).) Dr. Williams alleges that, when he became incontinent on multiple occasions, the defendants repeatedly ignored him for periods ranging from 30 minutes to two and a half hours while he lay helpless in his own urine and feces, despite his pleas for assistance. On more than one occasion, he alleges, a nurse responded to his pleas by throwing a dirty wipe in his face. He further alleges that there was such high conflict between his wife and hospital personnel over her complaints about their failure to attend to his needs that she was forcibly detained by police.

This is not a case of simple disagreement over "the nature of care" and "the type of care being provided." (*Alexander v. Scripps Memorial Hospital La Jolla* (2018) 23 Cal.App.5th 206, 223.) What we have here, at least as alleged, is retaliatory refusal to provide the most basic care to a patient who was perceived as difficult. The allegations, if true, amount to despicable heedlessness and cruelty. As a remedial statute, the Elder Abuse Act must be construed liberally in a manner that favors elders who seek to invoke its provisions. (*Mahan v. Charles W. Chan Ins. Agency, Inc.* (2017) 14 Cal.App.5th 841, 860–861; see *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 295.) Because of the

---

[3] Welfare and Institutions Code section 15600 et seq., the Elder Abuse and Dependent Adult Civil Protection Act (the Elder Abuse Act or the Act). Unless otherwise specifically designated, all statutory references are to the Welfare and Institutions Code.

Legislature's consistent pattern of broadening the Act over the last forty years and its close attention to ensuring potent remedies are available under its heightened remedy scheme, courts should be mindful of the legislative intent to incentivize claims, especially when undertaking review on demurrer. (*Mahan*, at p. 860; see *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 779 ["In 1991, in order 'to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults' (. . . § 15600, subd. (j)), the Legislature added . . . section 15657 to the Act."].)

Dr. Williams's allegations of "failure to assist in [his] personal hygiene" are based on "detailed and specific factual allegations" (*Covenant Care, Inc. v. Superior Court, supra*, 32 Cal.4th at p. 777) from which we may reasonably infer his nurses were not only deliberately indifferent to the indignity he was suffering, but ignored him intentionally with the aim of making him suffer as a means of control. It makes no difference that, in the end, he did not suffer physical harm. (Maj. opn., *ante*, at p. 10 ["the delay alleged in this case . . . occurred over a period of no more than 15 days and resulted in no physical injury"].) The Elder Abuse Act, on its face, covers "physical harm or pain or mental suffering." (§ 15610.07, subd. (a)(1).) Nor does it matter that even more egregious things have been held to constitute actionable neglect. (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 405–406 [citing examples].) The majority's conclusion to the contrary, as I see it, is like saying Dr. Williams may have been in distress but, after all, it could have been worse for him.

To the extent *Carter* can be read to require a level of culpability evincing awareness of a high probability of physical harm, I believe that reading of the Elder Abuse Act is incorrect. " 'Recklessness' " for purposes of

2

the Elder Abuse Act encompasses knowledge of potential physical or emotional harm (*Delaney v. Baker* (1999) 20 Cal.4th 23, 31–32), which properly aligns the applicable culpability standard with the Act's broad definition of actionable harm.  (§ 15610.7, subd. (a)(1).)  The only allegations of withheld care in *Carter*, in any event, had to do with allegedly substandard treatment (e.g., failure to administer antibiotics, failure to have properly equipped emergency "crash cart" on hand), which is classic negligence.  (*Carter v. Prime Healthcare Paradise Valley LLC*, *supra*, 198 Cal.App.4th at pp. 407–408.)  Dr. Williams pleads far more than negligence here, and he pleads it with particularity.  Whether his allegations, if proved, amount to gross negligence or a level of recklessness and intentionality sufficient to trigger the heightened remedies of the Elder Abuse Act should be decided by a jury.

STREETER, J.

3